IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 18, 2009

## STATE OF TENNESSEE v. DERRICK BRANDON WELLS

**Direct Appeal from the Circuit Court for Bedford County**
**No. 16197    Robert Crigler, Judge**

—————————————

**No. M2008-00428-CCA-R3-CD - Filed June 26, 2009**

—————————————

A jury convicted the Defendant, Derrick Brandon Wells, of both the sale and delivery of over .5 grams of a Schedule II controlled substance, crack-cocaine. The trial court merged the convictions and sentenced the Defendant as a Range II, multiple offender to twenty years and fined the Defendant $75,000. The Defendant appeals, contending the evidence was insufficient to support his conviction of the sale of crack-cocaine. After reviewing the record and relevant authorities, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Christopher Westmoreland (at trial), Shelbyville, Tennessee, and Hershell D. Koger (on appeal), Pulaski, Tennessee, for the Appellant, Derrick Brandon Wells.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Clarence E. Lutz, Assistant Attorney General; Charles F. Crawford, District Attorney General; Michael D. Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from a controlled buy organized by agents of the Seventeenth Judicial Drug Task Force and carried out with the aid of two informants. At the Defendant's jury trial, Agent Billy Ostermann, a Marshall County Sheriff's Department deputy assigned to the task force, testified he participated in a controlled buy near a Bedford County trailer. Agent Ostermann explained that, in a controlled buy, either an informant or an undercover officer purchases drugs using marked bills, and task force officers observe the purchase through visual or audio surveillance.

He recounted that, after receiving information that crack-cocaine was being sold out of a trailer on Highway 41-A North in Bedford County, the task force set up surveillance around the

trailer. During this time, agents noticed a truck leave the trailer, and, believing the truck's passengers to have purchased cocaine, they stopped the truck. One of the passengers, James Brown, readily admitted he possessed cocaine and produced the cocaine. Brown told the agents he had purchased the cocaine from a man he knew only as "Thousand."

In exchange for the agents' promise to tell prosecutors Brown had fully cooperated, Brown agreed to participate in a controlled buy of cocaine from the man known as Thousand. Because Brown lacked a valid driver's license as well as a cell phone, the officers enlisted Richard Wheeler, an informant with whom the task force had collaborated for several years, to drive Brown to and from the trailer.

Agent Ostermann testified that on the day of the controlled buy, June 23, 2006, he and fellow task force members met Brown and Wheeler at a secluded location. After the officers searched the informants and their vehicle for narcotics, Brown used Wheeler's cell phone to call the man he had identified as Thousand, and the officers observed and recorded this conversation. In the recording,[1] Brown calls Thousand, identifies himself, requests to buy $140 worth of cocaine, and agrees to meet Thousand in ten minutes at the trailer on Highway 41-A North. Brown provided the officers with Thousand's cell-phone number, and the officers gave Brown $140 in marked bills and equipped him with a recording device. The recording device instantaneously transmitted sound to Agent Ostermann, who had exclusive control of activating and de-activating the device.

Agent Ostermann explained that Agent Shane George left the meeting location first and parked with the trailer in view. Brown and Wheeler left for the trailer soon thereafter, with Agent Ostermann following them from a short distance. Agent Ostermann observed the informants pull into the trailer's driveway, where a mini-van was already parked, and the agent continued driving past the trailer and parked out of view of the trailer. His transmitter, however, picked up the sounds of the transaction through Brown's recording device. As Brown exited his vehicle and approached the trailer, Agent Ostermann heard a third-party tell someone to "call first" and then give the person the number Brown dialed to reach Thousand. Brown then began speaking with someone who said, "You can just keep the dollar," and Brown thanked the person and walked back to his vehicle.

As the informants left the trailer, the van that had been parked in the driveway followed them out of the driveway. After the two vehicles passed Agent Ostermann, he pulled onto the road behind the van and recorded its tag number before it turned into a residence. After the agent followed the informants' car to the previous meeting location and parked, the informants and their car were searched, and a wadded up dollar bill containing crack-cocaine was retrieved from Brown's sock. After the officers gave Wheeler $40 for the use of his car and cell phone, they allowed the informants to leave.

Agent Ostermann testified he placed the cocaine and dollar bill recovered from Brown in a small Ziploc bag. When he returned to his office, he placed the Ziploc bag within an evidence bag,

---

[1]The technical record for this appeal includes a copy of the recording.

which he labeled and sealed in preparation for submission to the Tennessee Bureau of Investigation ("TBI"). Agent Ostermann identified the evidence bag entered by the State as that which he used to enclose the substance recovered from Brown on June 23, 2006.

The agent said he was present when Agent Lane stopped the Defendant's truck on June 28, 2006. He explained he arrived at the stop after Agent Lane had already obtained the Defendant's consent to search the truck. Agent Ostermann overheard the Defendant acknowledge he received a "ruse" call from Agent Lane and state that he sold crack-cocaine on June 23. Also, he heard the Defendant tell Agent Lane that he and his wife fled the trailer with their cocaine shortly after they received the ruse call. After Agent Lane advised the Defendant of his *Miranda* rights, the Defendant acknowledged "Thousand" was his street name.

Agent Ostermann testified the controlled buy occurred approximately two hours after officers stopped the truck in which Brown rode as it left the trailer. He testified that Brown did not appear to be under the influence of any drug at any point on the day of the controlled buy. When he searched Brown immediately before the controlled buy, he did not require that Brown remove his socks and shoes but instead pulled his socks away from his legs and peered inside to ensure Brown did not carry narcotics into the transaction.

The agent explained the task force did not use video surveillance to record the controlled buy because they anticipated the transaction would occur within the trailer. He testified that, because the task force did not have a drug-dog unit, he did not use a dog to search the informants' vehicle after the buy but that he and his fellow officers searched the vehicle by hand. The officers' search of the informants' vehicle did not yield anything inappropriate either before or after the controlled buy. The agent re-iterated that the only compensation Brown received was the agents' assurance they would tell prosecutors of Brown's cooperation. He explained he did not arrest the Defendant on the day of the controlled buy because an immediate arrest would strongly suggest to the Defendant that Brown was the informant.

Agent Ostermann testified that, when Agent Lane stopped the Defendant on June 28, he helped Agent Shane George search the Defendant's truck and that he examined the Defendant's phone and determined it was registered under the same number that Brown dialed to set up the controlled buy.

Shane George, a Shelbyville Police Department officer assigned to the Seventeenth Judicial Drug Task Force testified he participated in the June 2006 controlled buy. He confirmed Agent Ostermann's account of the steps taken to prepare the informants for the controlled buy. The agent specified that, during the buy, he parked in a long driveway across the highway from and slightly north of the trailer. From his position, he first saw a mini-van pull into the trailer's driveway and then he saw the informants' vehicle pull into the trailer's driveway. He saw Brown exit the vehicle, walk to the trailer door, and knock. Instead of waiting for an answer, however, Brown turned to his left and walked to the end of the trailer where a hedge blocked him from Agent George's view. After a brief period, Brown walked back in front of the trailer and got back into his and Wheeler's

vehicle. The informants then left the trailer, and the mini-van pulled out close behind them. Agent George pulled onto the highway and followed the two vehicles, and the mini-van soon turned into a driveway. The agent then followed the informants to the meeting location. Agent George confirmed Agent Ostermann's testimony that, after the buy, the officers searched the informants as well as their vehicle and found nothing inappropriate.

The agent testified he was present five days after the buy when Agent Timothy Lane stopped the Defendant's vehicle and questioned the Defendant. He explained Agent Lane radioed him for assistance shortly after he initiated the stop. During the stop, the Defendant consented to a search of his vehicle, and Agent George searched the truck while Agent Lane spoke with the Defendant. Agent George found nothing incriminating in the Defendant's truck.

On cross-examination, Agent George clarified that, although he could see the trailer clearly from where he was parked, he could not hear what was going on because he did not have a transmitter connected to Brown's recording device. The agent also conceded that he did not see the Defendant at the trailer on the day of the controlled buy. He testified he was present when the informants and their vehicle were searched before and after the controlled buy. He confirmed that nothing inappropriate was found during these searches. The agent said that, although he had never arrested Brown, he knew Brown to be a drug user. He also said he believed Wheeler resumed his cocaine use within the last two years before the Defendant's trial.

Agent George testified that, when Agent Lane stopped the Defendant's truck several days after the buy, the driver identified himself as Derrick Wells. He said that both the cab and the bed of the truck were full of household items, suggesting to the agent that the Defendant was either moving or selling his belongings. Agent Lane seized the Defendant's cell phone during the stop, and Agent George examined the cell phone's contact list. He testified that the contact list contained the names of several known drug dealers and users in the Shelbyville area.

On re-direct examination, Agent George testified that the informants and their car were searched immediately after the informants arrived at the meeting location, which was only two to three minutes after the informants left the trailer. He also explained that the task force commonly delays arresting drug offenders in order to use the offender to net more significant offenders.

James Brown, who was incarcerated at the time of trial for drug-related offenses, testified he participated as an informant in the controlled buy of June 23, 2006. Brown testified he began working as an informant when the task force found him in possession of cocaine he had purchased from a man he knew as "Thousand." He testified that, although he had heard of Thousand before June 2006, he did not meet Thousand until he bought cocaine from him in June 2006. Brown testified he could not recall enough about the man he knew as Thousand to determine whether Thousand was indeed the Defendant.

Brown confirmed the agents' account of the events leading up to the controlled buy. He recalled that a van was parked at the trailer when he and Wheeler arrived. He explained that, after

4

Wheeler parked at the trailer, he approached the door because he expected the sale to occur inside the trailer. After he knocked, however, he realized that Thousand was outside the trailer beside an old car parked at the opposite end of the trailer from the driveway. He recalled that a third party was speaking with Thousand, but he did not recall the substance of their conversation. Brown walked to Thousand, handed him the $140, and Thousand handed him a substance wrapped in a dollar bill, which Brown placed in his sock. Brown explained that, because he was anxious to complete the transaction, he did not recall whether he and the Defendant spoke. At this point in this testimony, Brown stated that the man who handed him the substance was the Defendant.

Brown testified that he did not touch the substance after he placed it in his sock on the way back to the meeting place and that the officers retrieved it while they searched him, Wheeler, and their vehicle. He said he received no monetary compensation either for his cooperation in the controlled buy or for his testimony in the Defendant's trial.

On cross-examination, Brown said that the sentence he was currently serving was based on his convictions for selling cocaine in 2006 and that those were his only drug-related convictions. Forty-two years old at the time of trial, Brown testified he had used cocaine since his early twenties. He said he had used cocaine with Wheeler.

Brown explained his cocaine purchase from Thousand that led to his collaboration with the task force and the controlled buy occurred on the same day, June 23, 2006. He said the purchases occurred during daylight hours, about an hour apart. Both times, Brown bought an "eight-ball" of cocaine, enough to last one person several hours, for $140.

Brown testified that he had bought cocaine from Thousand only once before the day agents apprehended him on June 23, 2006, and that, as a result, he was not well-acquainted with Thousand. In fact, between the controlled buy and trial, Brown shared a jail cell with the Defendant for six months without recognizing him as Thousand. Brown said he "would have been a fool" to have remained in the cell if he had known his cell-mate was the man he helped police target. Brown testified, however, that he was sure the Defendant was Thousand, the man from whom he bought cocaine.

On re-direct examination, Brown clarified that his current sentence was based on two convictions: one for selling cocaine on June 9, 2006, and another for possessing cocaine on June 23, 2006.

Timothy Lane, director of the Seventeenth Judicial Drug Task Force, testified his fellow task force officers organized the controlled buy at the trailer on Highway 41-A North. Although he did not participate in the controlled buy, he followed up on the buy the evening of June 23. After the buy, Lane initiated a "ruse," a scheme intended to "smoke out" a suspect from the location of a controlled buy in order to identify the suspect. The agent, parked with the trailer in view, called the number Brown called to set up the buy. He told the man who answered that he was an inmate in the local jail and that several officers were on their way to search his trailer. Agent Lane hung-up before

5

the man could ask anything.

Two or three minutes after the call, Agent Lane's agents advised him three people were leaving the trailer and entering two vehicles. Both vehicles pulled out of the driveway but went opposite directions on the highway. Believing the Defendant was in the southbound vehicle, Agent Lane followed the southbound vehicle and stopped it. The agent soon realized, however, that the driver did not match the informants' description of Thousand. However, the driver admitted he had just bought cocaine from a man named Thousand. Although the driver agreed to assist in a controlled buy from Thousand, the buy never occurred due to logistical difficulties.

In the days following the June 23 controlled buy, task force officers continued their surveillance of the trailer. On June 28, 2006, five days after the buy, Agent Lane observed a man matching the informants' description of Thousand emerge from the trailer, get into a truck packed with household items, and pull onto the highway. Agent Lane followed the truck and, observing that the truck was speeding, stopped the truck.

The agent testified that the Defendant was the man driving the truck. Agent Lane requested the Defendant produce his driver's license, and the Defendant replied he did not have a valid license. Agent Lane asked the Defendant to step out of the truck, told him of the task force's investigation of the June 23 buy, and informed the Defendant he matched the informants' description of the seller. Agent Lane mentioned he had called the seller the evening of the buy, and the Defendant immediately acknowledged receiving the call. Further, the Defendant stated he had been selling and distributing crack-cocaine just before he received the call. The Defendant said he and his wife gathered the cocaine and left the trailer shortly after the call. At this point, Agent Lane informed the Defendant of his *Miranda* rights. The Defendant continued to divulge information about his drug activity to the agents. He told them his supplier was John Young, commonly known as "J5," a man the task force had long sought as a major provider of cocaine to the Shelbyville area. The Defendant confirmed that his own nickname was "Thousand" and gave the agents his cell phone number, which matched the number Brown dialed to set up the June 23 buy and to which Agent Lane placed a "ruse" call.

The agents informed the Defendant that, though they could arrest him for driving on a suspended license, they would allow him to remain free if he would agree to help them target Young. The agents explained a warrant would later be issued for his arrest based on his distribution of cocaine on June 23. The Defendant and the agents then entered into a "gentleman's agreement" that the Defendant would cooperate, and Agent Lane gave the Defendant his cell phone number. The agents seized the Defendant's cell phone and required that someone with a valid driver's license pick up the Defendant.

After the agents stopped the Defendant on June 28, the Defendant contacted Agent Lane only once and failed to provide any assistance in targeting Young. The Defendant never contacted the task force again, and he was soon arrested in Marshall County pursuant to a Bedford County warrant based on his June 23 sale of cocaine to Brown.

On cross-examination, Agent Lane explained that early on the day of the controlled buy a local bondsman informed the task force of suspicious activity at the trailer. The agent testified that, although he did not participate in the controlled buy, he may have been in vicinity of the trailer during the buy. He reiterated he was not present during the searches before and after the buy, and, therefore, he never saw the Defendant during the buy. Also, although he had met Brown and knew he assisted in several controlled buys, Agent Lane testified he had never participated with Brown in a controlled buy.

Agent Lane said that, when he called Thousand pretending to be a trusty at the local jail, he and three other agents were parked at various points along Highway 41-A. Another agent was parked within view of the trailer, and this agent notified Agent Lane when the three people left the trailer in two cars. He explained that he and his agents were unable to track the vehicle that turned north because it turned onto a side street before an officer could catch up to it.

The agent said Agents Ostermann and George were present when he pulled the Defendant over on June 28, 2006. According to the agent, the Defendant stated during the stop that he was moving to Wartrace, Tennessee. Agent Lane recalled that the truck's bed and passenger compartment were packed with "what you would expect to see when someone is moving, like a toaster, different pieces of furniture." After the Defendant told Agent Lane he did not have a valid driver's license, an agent called the local police station and confirmed the Defendant's license was indeed suspended. Agent Lane testified that, after he seized the Defendant's cell phone, he did not examine it, but another agent downloaded the phone's contact list. The agent emphasized that the Defendant spontaneously admitted his drug involvement and that he advised the Defendant of his *Miranda* rights shortly after the Defendant began divulging information.

Explaining that the Defendant's cooperation in targeting Young would have been very beneficial to the task force, Agent Lane testified he went to Wartrace to seek the Defendant after the Defendant "dropped off [the agent's] radar." The agent was unable to locate the Defendant in Wartrace.

On re-direct examination, Agent Lane explained he knew the driver of the southbound vehicle, which he followed after the ruse call, was not Thousand because the driver was Caucasian and the informants said Thousand was African-American. He also testified that, because the Defendant made contact only once and then ceased communication and he was unable to find the Defendant in Wartrace, he returned to Bedford County and obtained a warrant for the Defendant's arrest. The State introduced a copy of this warrant, which reflected that the warrant was issued on July 5, 2006.

Patti Choate, a forensic scientist with the TBI, testified about her role in the chain of custody of the substance recovered from Brown after the controlled buy. Agent Choate testified her tests revealed that the substance was 1.2 grams of cocaine base.

After hearing the evidence described above, the jury convicted the Defendant of one count

of selling over .5 grams of a Schedule II substance and one count of distributing over .5 grams of a Schedule II substance.  The jury set a $75,000 fine for count one and a $25,000 fine for count two.  After a hearing, the trial court merged the Defendant's convictions, sentenced the Defendant to twenty years in the Tennessee Department of Correction, and imposed a $75,000 fine.

## II. Analysis

The Defendant contends the evidence introduced at trial was insufficient to support his conviction for sale of a Schedule II controlled substance.  Specifically, he argues that the State's evidence failed to establish the Defendant's identity as the man known as "Thousand" who sold Brown cocaine.  The State responds that recorded surveillance of the controlled buy as well as phone records sufficiently supported the jury's verdict.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)).  This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence.  *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence.  *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence.  *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956).  "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact."  *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859.  "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'"  *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (*State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)).  The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation.  The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand.  Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses.  In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)).  This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence.

8

*Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

Tennessee Code Annotated section 39-17-417(a)(3) (2006) provides that it is a criminal offense for a person to knowingly sell a controlled substance. Cocaine is a Schedule II controlled substance. T.C.A. § 39-17-408 (2006).

In support of his contention that the evidence does not support his conviction, the Defendant argues that, because no agent saw the Defendant at the trailer on the day of the controlled buy, and because informant Brown was unable at trial to identify the Defendant as "Thousand," the evidence does not identify the Defendant as the seller in the June 23 controlled buy. As such, he continues, the State failed to establish an essential element of the offense of selling or delivering over .5 grams of a Schedule II substance.

Viewing the evidence presented in the light most favorable to the State, on June 23, 2006, Agents Ostermann and George observed Brown place a phone call and agree to meet a man he knew as "Thousand" at a trailer on Highway 41-A North in order to purchase drugs. Within minutes of this call, Brown went to the trailer and gave someone $140 in exchange for a dollar bill wrapped around a rock-like substance. After retrieving the substance from Brown, Agents Ostermann and George sealed, labeled, and stored the rock-like substance to preserve it for testing by the TBI crime lab. After the TBI received and securely stored the package, Agent Choate tested the substance and determined it to be 1.2 grams of cocaine base.

Shortly after the controlled buy, Agent Lane placed a "ruse" phone call to the number Brown previously dialed, urging the man who answered to flee because officers were on their way to his home. A task force agent then observed three individuals leave the trailer in two cars. Agent Lane stopped one of these cars, and its driver admitted he had recently bought cocaine from a man in the trailer, whom he knew only as Thousand. Several days later, on June 28, agents stopped the Defendant after he left the trailer in a truck packed as though he were moving his belongings. During this stop, the Defendant acknowledged his drug involvement to Agent Lane, saying that his street name was "Thousand" and that Young was his supplier. He stated he sold cocaine on June 23, 2006, and he recalled receiving Agent Lane's "ruse" phone call. The Defendant told the agent that he and his wife fled the trailer with his cocaine supply soon after the call. Agents determined the Defendant's cell phone was registered to the number that Brown and Agent Lane called on June 23, 2006.

The June 23 telephone exchange between Brown and the Defendant as well as the Defendant's own statement that he sold cocaine on June 23 are sufficient evidence of the Defendant's knowledge that the dollar bill he gave Brown contained a controlled substance. The activity observed outside the trailer after Agent Lane's ruse phone call, the Defendant's statement that he sold cocaine on June 23, the Defendant's identification of Young as his supplier, and the

Defendant's acknowledgment of his street name "Thousand" sufficiently establish the Defendant's identity as the man known as "Thousand" who sold cocaine to Brown on June 23. Further, Brown testified that the Defendant was "Thousand," from whom he purchased the cocaine. Brown's credibility was a question to be resolved by the jury. *Bland*, 958 S.W.2d at 659. Taken together, we conclude a rational jury could have found the essential elements of the offense with respect to the Defendant's selling cocaine to Brown on June 23, 2006. We conclude the evidence was sufficient to support the Defendant's conviction. The Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and of relevant authorities, we conclude the evidence was sufficient to support the Defendant's conviction. Accordingly, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER

10